IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| WILLIAM T.,[1] | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:18-CV-0055-BU |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff William T. seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Because the parties have consented to proceed before a magistrate judge, the undersigned has full authority under 28 U.S.C. § 636(c) to consider this appeal, including issuing a final judgment. After considering the pleadings, briefs, and the administrative record, the Court reverses the Commissioner's decision and remands the case for further proceedings.

I.  BACKGROUND

Plaintiff alleges that he is disabled as a result of scoliosis, osteoarthritis, COPD, depression, and leg problems. *See* Dkt. No. 16 (Administrative Record ["Tr."] at 185). In May 2017, he filed applications for disability insurance benefits and supplemental security income ("SSI") benefits. After his applications were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on August 1, 2018. *See* Tr. 36–59. At the time of the hearing, Plaintiff was 36 years old. Tr. 39. He has a high school equivalency

---

[1] Due to concerns regarding the privacy of sensitive personal information available to the public through opinions in Social Security cases, Plaintiff is identified only by first name and last initial.

1

diploma and past work experience as a glass installer, long-haul truck driver, short-order cook, and stocker. Tr. 40–41. Plaintiff has not engaged in substantial gainful activity since June 24, 2016. Tr. 19.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability or SSI benefits. *See* Tr. 14–31 (ALJ Decision). Although the medical evidence established that Plaintiff suffered from lumbar degenerative disc disease with scoliosis, cubital tunnel syndrome, obesity, chronic obstructive pulmonary disease, major depressive disorder, recurrent, and anxiety, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the Social Security regulations. Tr. 19–20. The ALJ further determined that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work, but could not return to his past relevant employment. Tr. 22, 25. Relying on a vocational expert's testimony, the ALJ found that Plaintiff was capable of working as a bench assembler, inspector/hand packager, and marker -- jobs that exist in significant numbers in the national economy. Tr. 26.

Plaintiff appealed the ALJ's decision to the Appeals Council. After the Council affirmed, Plaintiff filed this action in federal district court. Plaintiff contends that: (1) the ALJ erred in not properly weighing the opinion of Plaintiff's treating physician, Dr. Rutledge; and (2) that the RFC is not supported by substantial evidence because the ALJ did not adequately account for all of Plaintiff's limitations caused by his severe impairments.

Because the Court determines that Plaintiff's first point of error has merit, the hearing decision must be reversed and this case remanded for additional proceedings.

## II. LEGAL STANDARDS

Judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards

2

are applied to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

Substantial evidence means more than a scintilla, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). While a reviewing court must scrutinize the administrative record to ascertain whether substantial evidence supports the Commissioner's findings, it may not reweigh the evidence, try issues *de novo*, or substitute its own judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (citing 42 U.S. § 405(g)). A reviewing court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

To be entitled to social security benefits, a claimant must show that he is disabled within the meaning of the Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). In evaluating a disability claim, the Commissioner has promulgated a five-step sequential process to determine whether: (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past

3

relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. *See* 20 C.F.R. § 404.1520; *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. Once the claimant satisfies his or her initial burden, the burden shifts to the Commissioner at step five to show that there is other gainful employment in the national economy that claimant is capable of performing. *Greenspan*, 38 F.3d at 236. If the Commissioner shows that other jobs are available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557 (citing *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989) (per curiam); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984)). If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id*. However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728–29 (5th Cir. 1996).

III. ANALYSIS

Plaintiff contends that the ALJ failed to properly weigh the opinion of Plaintiff's treating physician, Dr. Rutledge, in assessing Plaintiff's RFC. *See* Dkt. No. 19 at 12–14. The Commissioner responds that the ALJ properly considered all the medical opinion evidence in the record, and that the ALJ's failure to explicitly discuss Dr. Rutledge's opinion amounts to no more than a harmless error. *See* Dkt. No. 21 at 3, 7. For the reasons outlined below, the Court disagrees.

A. Medical opinion evidence

The Social Security Administration recently revised the regulations concerning how the agency considers medical opinion evidence in disability determinations. For claims filed on or after March 27, 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); *accord Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (per curiam). Instead, an ALJ must consider each medical opinion or prior administrative finding in the record and evaluate its persuasiveness applying five factors: (1) supportability, (2) consistency, (3) relationship with the claimant (including: (i) length of treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of treatment relationship, (v) examining relationship), (4) specialization, and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. *Id*. § 404.1520c(c).

An ALJ must articulate how he considered the supportability and consistency factors for a medical opinion or a prior administrative medical finding in his determination. *Id*. § 404.1520c(b)(2). However, an ALJ may, but is not required to, discuss how he considered the medical source's relationship with the claimant, specialization, or other factors in his

determination. *Id*. When one medical source provides multiple opinions, the ALJ is not required to articulate how he "considered all of the factors for all of the medical opinions" and will instead articulate how he considered those opinions "together in a single analysis using the factors" listed above. *Id*. § 404.1520c(b)(1).

Not all statements by medical providers are considered medical opinions. Under the revised regulations, "[a] medical opinion is a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions," in the claimant's ability to perform the physical or mental demands of work activities, perform other demands of work, and adapt to environmental conditions. *Id*. §§ 404.1513(a)(2), 416.913(a)(2). Medical signs and laboratory finding are considered "objective medial evidence." *Id*. §§ 404.1513(a)(1), 416.913(a)(1). And any other statements, "including judgments about the nature and severity of [the claimant's] impairments, [the claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis" constitute "other medical evidence." *Id*. §§ 404.1513(a)(3), 416.913(a)(3).

B. Dr. Rutledge's opinion

Starting in June 28, 2016, Plaintiff was treated by Dr. Cynthia Rutledge for his various ailments. *See* Exhibits B5F, B6F, and B10F (Tr. 455–542, 620–624). On Plaintiff's first visit, Dr. Rutledge noted his chronic back pain, scoliosis, and that he ambulated with a cane. Tr. 502. Dr. Rutledge ordered an X-ray to determine the severity of the scoliosis. Tr. 457. On subsequent visits, Dr. Rutledge noted Plaintiff's other ailments, including hypothyroidism, vitamin D deficiency, chronic obstructive lung disease, displacement of lumbar intervertebral disc without myelopathy, fatigue, and dysuria. Tr. 489.

On November 1, 2016, Plaintiff attended a follow-up appointment with Dr. Rutledge and brought Medicaid paperwork regarding Plaintiff's ability to work. Tr. 490. The "Medical Release/Physician's Statement" was a preprinted form consisting of checkboxes and fill-in-the-blank spaces. *See* Tr. 504–505. Dr. Rutledge checked the box that Plaintiff "would be able to work, or participate in activities to prepare for work, with restrictions" full time (40 hours/week). Tr. 504. From a list of possible activities, Dr. Rutledge checked boxes indicating that Plaintiff could (1) sit and (2) keyboard for eight hours. *Id*. Inserting values in the blanks provided, Dr. Rutledge indicated that Plaintiff "may not lift/carry objects more than 0 lbs. for more than 0 hours per day." *Id*. Dr. Rutledge did not provide any additional written comments regarding Plaintiff's limitations. *See* Tr. 504–505. Dr. Rutledge contemporaneously documented her completion of the form, noting: "paperwork filled out for Medicaid stating [patient] could work sit-down job, with no lifting." Tr. 491.

C. The ALJ decision

At the hearing before the ALJ, Plaintiff testified that he has scoliosis, osteoarthritis in his back, and damaged spinal disks. Tr. 42. Because of his back problems, he has trouble bending, stooping, and pain radiates down his left leg. Tr. 43. Plaintiff also testified that he is limited in his ability to walk, does not go anywhere without a cane, and can only walk 30 to 40 feet at a time. Tr. 44. Plaintiff testified that he can lift and carry only very little. Tr. 51. He estimated that he can pick up a gallon of milk and carry it across a room, but only in his right hand. Tr. 51. His left hand goes numb and experiences pain. Tr. 52. Plaintiff testified that he has trouble closing his left (dominant) hand, pushing down, or grasping. Tr. 52. The ALJ observed during the hearing that Plaintiff's hand was shaking while signing documents. Tr. 53.

In his written decision, the ALJ found that Plaintiff had multiple severe physical impairments, including lumbar degenerative disc disease with scoliosis, cubital tunnel syndrome, obesity, and chronic obstructive pulmonary disease. Tr. 19.  In light of those impairments, the ALJ determined that Plaintiff had the residual functional capacity to perform a reduced range of light work with the following restrictions:

> He is able to lift and carry 20 pounds occasionally and 10 pounds frequently. He is able to stand and walk 2 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday. He uses a cane for long distances and for uneven terrain. He should not climb ladders or scaffolds, but is able to climb ramps and stairs occasionally. He is able to balance, stoop, kneel, crouch, and crawl occasionally. He can have occasional exposure to environmental pollutants. He can carry out detailed but uninvolved written or oral instructions. He can occasionally work with the public but can work frequently with coworkers.

Tr. 22. In reaching this conclusion, the ALJ noted that he considered Plaintiff's symptoms and the objective medical evidence. *Id*. He additionally "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c." *Id*.

The ALJ primarily cited to objective medical evidence in justifying his assessment regarding Plaintiff's ability to lift and carry. *See* Tr. 23.  He noted that the lumbar X-ray showed evidence of scoliotic deformity of the thoracolumbar spine and multilevel degenerative changes and that an MRI showed degenerative disc disease in the lower lumbar spine but without nerve impingement of spinal stenosis. *Id*. He also noted Plaintiff's intermittent antalgic gait with use of a cane, and intermittent diminished sensation in the left upper extremity and left upper extremity. *Id*.  And he noted an electromyogram ("EMG") and nerve conduction study ("NCS") of the upper extremities in the record showing evidence of bilateral ulnar mononeuropathy at the elbow, and cubital tunnel syndrome, moderate on the left side and mild on the right. *Id*. However, despite these conditions, the ALJ remarked that Plaintiff often exhibited normal gait and station, normal heel-and-toe walk, normal to mildly reduced strength, negative straight leg raise, normal

musculoskeletal exam, and normal neurologic findings. *Id*. Additionally, the ALJ noted that Plaintiff had undergone one cervical MRI and thoracic MRI that was essentially normal. *Id*.

The ALJ's discussion of the medical opinion evidence in the record was limited to the opinions provided by the State agency medical consultants, who had determined that Plaintiff was able to lift and carry 20 pounds occasionally and 10 pounds frequently. Tr. 24. The ALJ gave the opinions of the State agency physicians "significant weight." *Id*. However, based on additional medical evidence, the ALJ afforded Plaintiff the benefit of the doubt and found him even more impaired physically and mentally. *Id*. The ALJ did not mention the opinion of Dr. Rutledge at any point in his decision.

D. The parties' positions

Plaintiff argues that the November 1, 2016, statement by Dr. Rutledge that Plaintiff was unable to lift any weight was a medical opinion entitled to controlling weight under 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). *See* Dkt. No. 19 at 12. Because Dr. Rutledge was a treating physician, Plaintiff argues that the ALJ should have weighed her opinion using the six factors laid out in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) before rejecting it. *Id*. at 12–13. And Plaintiff argues that the ALJ's failure to mention, much less weigh, Dr. Rutledge's opinion constitutes reversible error. *Id*. at 9.

The Commissioner responds that the ALJ considered the medical opinion evidence in the record in accordance with the requirements of 20 C.F.R. §§ 404.1520c, 416.920c. *See* Dkt. No. 21 at 3. The Commissioner does not argue that the November 1, 2016, statement by Dr. Rutledge was not a medical opinion under the current regulations. *See id.* at 4. However, the Commissioner argues that Dr. Rutledge's opinion "should be classified as brief or conclusory statement as it consisted solely of check-box findings without further explanation." *Id*. Accordingly, the

9

Commissioner argues it would have been proper for the ALJ to discount the opinion under Fifth Circuit precedent. *Id.*

While contending that the ALJ properly considered all medical opinion evidence in the record, the Commissioner further argues that the ALJ's failure to discuss Dr. Rutledge's opinion amounts to no more than a harmless error. *Id*. at 7. The Commissioner acknowledges that "statements about what a claimant can still do despite his impairments are important evidence that must be considered in assessing a claimant's RFC, but [that] such statements are not determinative." *Id*. at 6. The Commissioner points to the opinions of the State agency physicians, who did not find Plaintiff as limited as Dr. Rutledge, and the objective medical evidence supporting the ALJ's assessment. *Id*. at 5–6. Because substantial evidence supported the ALJ's decision, and because Dr. Rutledge's opinion was inconsistent with that evidence, the Commissioner argues that the failure to mention the opinion had no effect on the outcome and so was harmless. *Id*. at 7.

E. <u>Failure to consider Dr. Rutledge's medical opinion was a legal error and not harmless.</u>

The Court first notes that Plaintiff cites to the incorrect legal standards governing the ALJ's duties to consider medical opinion evidence and prior administrative findings in this case. Because Plaintiff's claims were filed in May of 2017, the ALJ was required to consider the medical opinion evidence in the record under 20 C.F.R. § 404.1520c and not § 404.1527. As noted above, under the revised regulations covering claims filed after March 27, 2017, treating physician opinions are no longer entitled to controlling "weight." No medical opinion is to be assigned any weight but an ALJ must consider all medical opinion evidence, determining each opinion's persuasiveness by applying the regulatory factors. *See id*. § 404.1520c(c). Accordingly, Plaintiff's argument that the ALJ was required to give Dr. Rutledge's opinion controlling weight has no legal basis. Likewise,

Plaintiff's suggestion that the ALJ should have applied the six factors in weighing Dr. Rutledge's opinion as a treating physician is incorrect.

Nevertheless, although Plaintiff is incorrect in arguing that the opinion of Dr. Rutledge was entitled to controlling weight because she was a treating physician, the question remains whether the ALJ's failure to even mention her opinion in his discussion constitutes legal error. The Court finds that it does.

The Court agrees that the November 1, 2016, statement by Dr. Rutledge, although prepared using a "check-the-box" form, was a medical opinion. The statement that Plaintiff "may not lift/carry objects more than 0 lbs. for more than 0 hours per day" was "a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s)." 20 C.F.R. § 404.1513(a)(2). While the Fifth Circuit has held that an ALJ may *discount* medical opinions that use a check-the-box format when an ALJ finds them unsupported by the evidence, these cases do not justify excluding such opinions from the category of "medical opinion" evidence altogether. *See Foster v. Astrue*, 410 F. App'x. 831, 833 (5th Cir. 2011) (finding good cause to give partial weight to a treating physician's questionnaire-format opinion "due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examination . . . ."); *Rollins v. Astrue*, 464 F. App'x 353, 357 n. 5 (5th Cir. 2012) (finding that "check-the-box" forms without additional explanations may be discounted but reserving the determination for the ALJ).

The revised regulations in effect when Plaintiff filed his claim require that the ALJ consider every medical opinion received. 20 C.F.R. § 404.1520c(a). An ALJ must assess the persuasiveness of each medical opinion or prior administrative finding by applying five factors: supportability, consistency, relationship with the claimant, specialization, and other factors. *Id*. § 404.1520c(c). Because supportability and consistency are the most important factors, the regulations further

11

require that an ALJ specifically explain how he considered those factors when he articulates how he considered a medical opinion in his determination or decision. *Id*. § 404.1520c(b)(2). Based on that requirement, the regulations do not appear to contemplate a scenario where an ALJ fulfills his legal obligation to consider a medical opinion without also explicitly discussing how he did so.

The ALJ did not discuss or even mention Dr. Rutledge's medical opinion in his decision. This either means that the ALJ did not consider the opinion, or that he considered it but failed to mention it. Under either scenario, he committed a legal error. The ALJ was required to consider the medical opinion of Dr. Rutledge when making his decision. *Id*. § 404.1520c(a). The ALJ was also required to *explain* how persuasive he found Dr. Rutledge's opinion, at least with respect to the factors of supportability and consistency. *Id*. § 404.1520c(b)(2). The ALJ's failure to mention Dr. Rutledge's opinion was therefore a legal error requiring remand. *See Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017) (finding that under the analogous section of the prior regulations, an ALJ's failure to mention the opinion of an examining physician required a remand).

The Commissioner argues that the ALJ did fulfill his obligation to consider the medical opinion evidence. Dkt. No. 21 at 3. But the only support the Commissioner provides for this statement is the ALJ's blanket assertion that he considered all medical opinion evidence in the record (Tr. 22) and his limited discussion of the State agency physicians' opinions (Tr. 24). Neither is sufficient to show that the ALJ considered the opinion of Dr. Rutledge. "[C]ursory, boilerplate language about carefully considering the entire record does not constitute an explanation for rejecting a medical opinion." *Kneeland*, 850 F.3d at 761. Although the ALJ stated that he considered the entire record and opinion evidence in accordance with the Commissioner's regulations, the ALJ's decision neither cited nor discussed Dr. Rutledge's medical opinion. The ALJ thus appears to have failed to consider or failed to explain the opinion of Dr. Rutledge. In

either case, the omission amounts to a reversible legal error. *Cf. Davidson v. Colvin*, 164 F. Supp. 3d 926, 942 (N.D. Tex. 2015).

But the Commissioner argues that even if a legal error occurred, the ALJ's failure to mention Dr. Rutledge's opinion constitutes harmless error. Dkt. No. 21 at 7. The Court disagrees. The Court finds that it is not inconceivable that a different administrative conclusion would have been reached by the ALJ had he considered the medical opinion of Dr. Rutledge.

Harmless error doctrine applies in Social Security disability cases. *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1998). "Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). "[H]armless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Davidson*, 164 F. Supp. 3d at 944 (citing *Bornette v. Barnhart*, 466 F. Supp. 2d 811 (E.D. Tex. 2006) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003))).

In *Kneeland*, applying the prior regulations concerning medical opinion evidence, the Court noted that the Commissioner could point to no cases where an ALJ's failure to mention an examining physician's medical opinion was deemed harmless. 850 F.3d at 761–62. This was because "such an error makes it impossible to know whether the ALJ properly considered and weighed an opinion, which directly affects the RFC determination." *Id.* at 762.

Dr. Rutledge's opinion was that Plaintiff could lift no weight. The ALJ contradicted Dr. Rutledge's opinion when he concluded in his RFC assessment that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently. Because there is no discussion from the ALJ resolving this inconsistency, the fact that the ALJ failed to discuss, cite, or even mention Dr.

13

Rutledge's medical opinion makes it impossible to know whether the ALJ properly considered that opinion, which directly affects the RFC determination. *Kneeland*, 850 F.3d at 761.

In addition, the ALJ did not pose a hypothetical question to the vocational expert at Plaintiff's hearing that incorporated Dr. Rutledge's medical opinion. If the ALJ had considered Dr. Rutledge's opinion that Plaintiff would be unable to lift or carry, it is not inconceivable that the ALJ would have reached a different result. Accordingly, the ALJ's error was not harmless and remand is appropriate. *Id*. at 762.[2]

## IV. CONCLUSION

For the foregoing reasons, the Court REVERSES the decision of the Commissioner and REMANDS this case for further administrative proceedings consistent with this order.

IT IS SO ORDERED this 25th day of November, 2020.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE

---

[2] The Court does not reach Plaintiff's second point of error because it remands as to the first.